E-FILED
Friday, 06 March, 2020  04:52:20 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | |
| Plaintiffs, | Case No. |
| v. | |
| S.M. WILSON & CO., and THE SALVATION ARMY, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## (WITH JURY DEMAND)

Plaintiffs, THE PHOENIX INSURANCE COMPANY ("Phoenix"), THE TRAVELERS INDEMNITY COMPANY ("Travelers Indemnity") and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers Property") (Phoenix, Travelers Indemnity and Travelers Property are referred to collectively herein as "Plaintiffs"), by and through their attorneys, Karbal, Cohen, Economou, Silk & Dunne, LLC, hereby file their Complaint for Declaratory Judgment against Defendants, S.M. WILSON & CO. ("SMW") and THE SALVATION ARMY ("TSA") (SMW and TSA are referred to collectively herein as "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      In this action, Plaintiffs seek a declaration from this Court, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, that there is no coverage (duty to defend or indemnify) under primary and excess liability insurance policies issued by Plaintiffs to SMW with respect to

approximately $10,000,000 in alleged breach of contract damages being sought by TSA from SMW for numerous defects to TSA's Kroc Center located in Quincy, Illinois.

## THE PARTIES

2.      Plaintiff Phoenix is a Connecticut corporation with its principal place of business located in Connecticut.

3.      Plaintiff Travelers Indemnity is a Connecticut corporation with its principal place of business located in Connecticut.

4.      Plaintiff Travelers Property is a Connecticut corporation with its principal place of business located in Connecticut.

5.      Defendant SMW is a Delaware corporation with its principal place of business located in St. Louis, Missouri.

6.      Defendant TSA is an Illinois corporation with its Midland Divisional Headquarters located in St. Louis, Missouri.  TSA is named herein solely as a necessary party and Plaintiffs will dismiss TSA in the event it agrees to be bound by a final judgment in this case.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because the Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      The Court has personal jurisdiction over Defendant SMW because it routinely conducts business in Illinois and the claim at issue in this declaratory judgment action arises out of a construction project located in Quincy, Illinois.

9.      The Court has personal jurisdiction over Defendant TSA because it is an Illinois corporation.  TSA is the owner of the property at issue in this matter, which is located in Quincy, Illinois.

10.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to SMW's claim for coverage happened in this judicial district and the property at issue in SMW's claim for coverage is located in this judicial district.

## GENERAL ALLEGATIONS

11.     TSA filed a Demand for Arbitration against SMW on or about July 13, 2016.

12.     At issue in the Arbitration Demand was the alleged defectively designed and constructed Ray and Joan Kroc Corps Community Center located in Quincy, IL (the "Project").

13.     SMW was allegedly the general contractor or construction manager of the Project pursuant to an agreement entered into with TSA in March of 2008.

14.     The Project was completed on August 17, 2011 and opened to the public in September 2011.

15.     TSA alleges that SMW was aware of problems with the HVAC system in August 2011 when the Project was turned over.

16.     TSA alleges that in August 2012, it discovered problems relating to the mechanical, electrical and plumbing systems throughout the building.

17.     In 2015, TSA allegedly discovered that there were numerous defects in the exterior and interior components of the Project due to a variety of construction workmanship and designed related problems.

18.     After filing the Demand for Arbitration regarding the HVAC, electrical and defects in the exterior and interior components of the Project, TSA allegedly discovered new defects in 2017 and 2018.

19.     TSA then filed a First Amended Demand For Arbitration in or about March 2018.

20.     In early 2020, TSA filed its Second Amended Demand for Arbitration ("SAD").

21.     TSA has grouped the alleged defects of the Project into three categories: System Issues, Distress Issues and New Issues.

22.     The System Issues involve alleged major deficiencies in the electrical and HVAC systems of the Project due to, among other things, improper design and engineering, improper application and sizing of various plumbing and HVAC systems ductwork and other components, failure to properly mount HVAC units to the roof and other installation deficiencies.

23.     The Distress Issues involved approximately 21 areas, ranging from purported code violations to improperly sloped floors.

24.     The New Issues include the purported lack of exterior air barrier and insulation, defective duct work serving Natatorium and Pool Dehumidification Unit (PDU), various window failures and mold on drywall.

25.     In addition to its allegations concerning the three categories of purported defects, TSA alleges for the first time in the SAD that SMW was aware as early as 2011 before the Project was turned over of certain defects, including in the HVAC System and concealed them.

26.     The total damages alleged by TSA appear to be between $1,000,000 and $10,000,000 plus prevailing attorney's fees.

27.     SMW, through its broker, first provided notice to Phoenix on September 3, 2019. (A copy of the Accord Form is attached hereto and incorporated herein as Exhibit A.)

28.     In October 2019, before the filing of the SAD which alleges SMW was aware of the Project defects years before SMW gave Phoenix notice, Phoenix agreed to defend SMW pursuant to a reservation of all of its rights and defenses.

### THE POLICIES[1]

29.     Phoenix issued the following primary insurance policies to SMW.

| Policy No. | Policy Period |
|---|---|
| DT-CO-512M6845-PHX-10 | 12/31/2010 – 12/31/2011 |
| DT-CO-512M6845-PHX-11 | 12/31/2011 – 12/31/2012 |
| DT-CO-6C476466-PHX-12 | 12/31/2012 – 12/31/2013 |
| DT-CO-6C476466-PHX-13 | 12/31/2013 – 12/31/2014 |
| D-CO-6C476466-PHX-14 | 12/31/2014 – 12/31/2015 |
| DT-CO-6C476466-PHX-15 | 12/31/2015 – 12/31/2016 |
| DT-CO-6C476466-PHX-16 | 12/31/2016 – 12/31/2017 |
| DT-CO-6C476466-PHX-17 | 12/31/2017 – 12/31/2018 |
| DT-CO-6C476466-PHX-18 | 12/31/2018 – 12/31/2019 |

30.     Collectively, the nine insurance policies referenced in Paragraph No. 29 are referred to hereinafter as the "Phoenix Policies."  (A copy of the 12/31/2017-2018 Phoenix Policy is attached hereto and incorporated herein at Exhibit B.)

31.     Travelers Indemnity issued the following excess insurance policies to SMW:

| Policy No. | Policy Period |
|---|---|
| DTSM-CUP-512M6845-IND-10 | 12/31/2010 – 12/31/2011 |
| DTSM-CUP-512M6845-IND-11 | 12/31/2011 – 12/31/2012 |
| DTSM-CUP-6C476466-IND-12 | 12/31/2012 – 12/31/2013 |
| DTSM-CUP-6C476466-IND-13 | 12/31/2013 – 12/31/2014 |
| DTSM-CUP-6C476466-IND-14 | 12/31/2014 – 12/31/2015 |
| DTSM-CUP-6C476466-IND-15 | 12/31/2015 – 12/31/2016 |
| CUP-9H211017-16-26 | 12/31/2016 – 12/31/2017 |
| CUP-9H211017-17-26 | 12/31/2017 – 12/31/2018 |

32.     Collectively, the eight insurance policies referenced in Paragraph No. 31 are referred to hereinafter as the "Travelers Indemnity Policies."  The relevant terms, conditions,

---

[1] Plaintiffs will provide certified copies of the insurance policies referenced herein to SMW and will also provide copies of all of the policies to the Court upon request.

limitations, definitions and exclusions of the Travelers Indemnity Policies are the same or substantially similar.  (A copy of the 12/31/2017-2018 Travelers Indemnity Policy is attached hereto and incorporated herein at Exhibit C.)

33.    Travelers Property issued the following excess insurance policy to SMW:

| **Policy No.** | **Policy Period** |
|---|---|
| CUP-9H211017-18-26 | 12/31/2018 – 12/31/2019 |

34.    The insurance policy referenced in Paragraph No. 33 is referred to hereinafter as the "Travelers Property Policy."  The relevant terms, conditions, limitations, definitions and exclusions of the Travelers Property Policy are the same or substantially similar to those contained in the Travelers Indemnity Policies.  (A copy of the 12/31/2018-2019 Travelers Property Policy is attached hereto and incorporated herein at Exhibit D.)

35.    The Travelers Indemnity Policies and the Travelers Property Policy are referred to collectively herein as the "Travelers Excess Policies."

36.    The Phoenix Policies and the Travelers Excess Policies are referred to collectively herein as the "Policies."  The Policies are subject to their respective terms, conditions, limitations, definitions and exclusions.

37.    The Phoenix Policies provide for covered claims primary commercial general liability ("CGL") coverage with limits of $1 million each occurrence, $2 million products and completed work total limit and/or products-completed operations aggregate limit, and $2 million general total limit or general aggregate limit.

38.    The Travelers Excess Policies provide for covered claims excess coverage with limits of $10 million any one occurrence, $10 million products and completed work total limit or products/completed operations aggregate limit, and $10 million general total limit or general aggregate limit.

**THE PHOENIX POLICIES**

39.   The Phoenix Policies contain the following insuring agreement:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)**   The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

   **(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.

   **b.**   This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. . . .

40.    The Phoenix Policies contain the following relevant definitions:

    **8.**  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**  You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by:

    **a.**  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**  Your fulfilling the terms of the contract or agreement.

*　　*　　*

    **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**  False arrest, detention or imprisonment;

    **b.**  Malicious prosecution;

    **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*   \*   \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*   \*   \*

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An Arbitration proceeding in which such damages are claimed and to which the insured must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submit with our consent.

\*   \*   \*

41. The Phoenix Policies contain the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*     \*     \*

**j.  Damage To Property**

"Property damage" to . . .

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\*     \*     \*

42.    The Phoenix Policies provide as to the terms your products, your completed work, and your work as follows:

**16.** "Products-completed operations hazard":

**a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.**    Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products

11

completed-operations are subject to the General Aggregate Limit.

\* \* \*

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

\* \* \*

43.    The Phoenix Policies also contain the following additional relevant exclusions:

**CG D2 43 01 02**

**FUNGI OR BACTERIA EXCLUSION:**

This endorsement modifies insurance provided under the following:

        COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I —Coverage A — Bodily Injury and Property Damage**

> **2.** Exclusions
>
> This insurance does not apply to:
>
> **Fungi or Bacteria**
>
> **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects, of "fungi" or bacteria, by any insured or by any other person or entity.
>
> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

*   *   *

**C.** The following definition is added to the **Definitions** Section:

> "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

*   *   *

**CG D2 93 11 03**

**EXCLUSION –CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

\* \* \*

**CG D5 46 10 11**

**EXCLUSION – ARCHITECTURAL, ENGINEERING OR SURVEYING PROFESSIONAL SERVICES[2]**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2. Exclusions,** of **SECTION I –COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **Architectural, Engineering, or Surveying Professional Services**

   "Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services" by or on behalf of any insured, but only with respect to either or both of the following operations:

   a. Providing, or hiring independent professionals to provide, architectural, engineering or surveying services to others in any insured's capacity as an architect, engineer, or surveyor; and

   b. Providing or hiring independent professional to provide, architectural, engineering or surveying services in connection with construction work any insured performs.

2. The following exclusion is added to Paragraph **2. Exclusions,** of **SECTION I –COVERAGES, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

---

[2] CG D5 46 12 09 is endorsed to Travelers Indemnity Policy Nos. DTSM-CUP-512M6845-IND-10 and DTSM-CUP-512M6845-IND-11 but the language is substantially similar to form CG D5 46 10 11.

**Architectural, Engineering, or Surveying Professional Services**

"Personal injury" or "advertising injury" arising out of the rendering of or failure to render any "professional services" by or on behalf of any insured, but only with respect to either or both of the following operations:

**a.** Providing, or hiring independent professionals to provide, architectural, engineering or surveying services to others in any insured's capacity as an architect, engineer, or surveyor; and

**b.** Providing or hiring independent professional to provide, architectural, engineering or surveying services in connection with construction work any insured performs.

**3.** The following exclusion is added to the **DEFINITIONS** Section:

"Professional Services":

a. Includes:

**(1)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or preparing, approving, or failing to prepare or approve, drawings and specifications; and

**(2)** Supervisory or inspection activities performed as part of any related architectural, or engineering or surveying activities.

**b.** Does not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

\* \* \*

44.     Section III of the Phoenix Policies state the applicable Limits of Insurance for each of the Phoenix Policies.  The Phoenix Policies provide a $1,000,000 per occurrence limit of liability and $2,000,000 products-completed operations aggregate limit, subject to their respective terms, exclusions, definitions and conditions.

45.     The Phoenix Policies also contain endorsement CG D2 03 12 97, AMENDMENT-NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY, which states:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** Paragraph 5 of SECTION III - LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Each Occurrence Limit- If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. The policies' Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

46.    **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

provides at relevant part as follows: . . .

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; . . .

\*    \*    \*

16

**THE TRAVELERS EXCESS POLICIES**

47.  The Travelers Excess Policies contain the following insuring agreement:

**SECTION I COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY.**

**1.  INSURING AGREEMENT.**

**a.**  We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

This insurance applies to "bodily injury" or "property damage" only if:

**(i)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

**(ii)**  The "bodily injury" or "property damage" occurs during the policy period;

**(iii)**  Prior to the policy period, no insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized employee knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

This insurance applies to "personal injury" or "advertising injury" caused by an "offense" committed during the policy period, anywhere in the world.

**b.**  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**c.**  "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

**d.**  The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**.  …

\*   \*   \*

48.    The Travelers Excess Policies contain the same definitions of "impaired property", "occurrence", personal injury", "property damage", "advertising injury" and "suit".

49.    The Travelers Excess Policies contain the following additional relevant definitions:

**2.**  "Applicable limit of insurance" means the maximum amount we will pay as damages in accordance with **SECTION III – LIMITS OF INSURANCE.**

**3.**  "Applicable underlying limit" means:

**a.**  If the policies of "underlying insurance" apply to the "occurrence" or "offense", the greater of:

**(1)** The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or
**(2)** The "retained limit" shown in the Declarations; or

**b.**  If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the amount stated in the Declarations as the "retained limit".

The limits of insurance in any policy of "underlying insurance" will apply even if:

(i)  The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

(ii) The "underlying insurer" becomes bankrupt or insolvent.

\*   \*   \*

**14.** "Retained Limit" is the sum stated in the Declarations as such. If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the insured shall retain this amount as self insurance with respect to:

**a.**  "Bodily injury" or "property damage" caused by each "occurrence"; or
**b.**  "Personal injury" or "advertising injury" sustained by any one person or organization and caused by an "offense".

\*   \*   \*

**16.** "Ultimate net loss" means the sum actually paid or payable due to a claim for which the insured is liable either by a settlement to which we

agreed or a final judgment.  Such sum will include proper adjustments for recoveries and salvage.

**17.** "Underlying insurance" means the policies listed in the Schedule of Underlying Insurance and includes:

**a.** Any renewal or replacement of such policies; and
**b.** Any other insurance available to the insured.

**18.** "Underlying insurer" means any insurer which provides a policy listed in the Schedule of Underlying Insurance or any other insurance available to the insured.

\* \* \*

50.    The Travelers Excess Policies contain the following relevant conditions:

**5. DUTIES IN THE EVENT OF OCCURRENCE OR OFFENSE, CLAIM OR SUIT**

**a.** You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim under this insurance. Notice should include:

**(1)** How, when and where the "occurrence" or "offense" took place; and
**(2)** The names and addresses of any injured persons and witnesses.

**b.** If a claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that we receive prompt written notice of the claim or "suit".

\* \* \*

**9. MAINTENANCE OF UNDERLYING INSURANCE.**

The insurance afforded by each policy in the schedule of "underlying insurance" in the Declarations will be maintained for the full term of this insurance. This provision does not apply to the reduction of the aggregate limit or limits due to payment of judgments or settlements for "bodily injury", "personal injury", "property damage" or "advertising injury". As these policies expire, you will renew them at limits at least equal to the expiring limits of insurance. …

\* \* \*

**AMENDMENT – OTHER INSURANCE CONDITION AND MEANING OF OTHER INSURANCE AND OTHER INSURER**

This endorsement modifies insurance provided under the following:

COMMERCIAL    EXCESS    LIABILITY    (UMBRELLA) INSURANCE

The following replaces Paragraph **10.**, **OTHER INSURANCE.,** of **SECTION IV – CONDITIONS**

**10. OTHER INSURANCE**

This insurance is excess over any valid and collectible other insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise.  This provision does not apply to a policy bought specifically to apply excess of this insurance.

As used anywhere in this policy, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(i)** another insurance

**(ii)** Us or any of our affiliated insurance companies, except when the Non cumulation of Each Occurrence Limit provision of Paragraph **5.** of **SECTION III – LIMITS OF INSURANCE** or the Non cumulation of Personal and Advertising Injury Limit provision of Paragraph **4.** of **SECTION III – LIMITS OF INSURANCE** applies;

**(iii)** Any risk retention group;

**(iv)** Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reasons, in which case the insured will be deemed to be the provider of the other insurance; or

**(v)** any similar risk transfer or risk management method.

As used anywhere in this policy, other insurer means a provider of other insurance.

51.    The Travelers Excess Policies contain substantially the same Expected or Intended, Damage To Your Products or Completed Work, Damage to Your Product, Damage to Your Work, Impaired Property, Fungi or Bacteria, Construction Management Error and Omission, Professional Services and contractual liability exclusions as in the Phoenix Policies.

52.    The Travelers Excess Policies contain the following additional relevant exclusion:

**EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professional to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to paragraph 3. below, professional services include:

   a. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

*   *   *

### COUNT I
### (No Duty To Defend Or Indemnify – Phoenix Policies)

53. Plaintiff Phoenix hereby incorporates by reference Paragraphs 1-52 of this Complaint as if each was fully set forth herein.

54. TSA's damages, if any, asserted in the SAD allegedly result from SMW's defective and/or nonconforming work at the Project, which was in breach of SMW's contract with TSA.

55. There is no coverage for TSA's SAD against SMW under the Phoenix Policies on one or more of the following grounds:

   A. SMW's liability for the allegations in the SAD, if any, is not for damages "because of property damage" to which the Phoenix Policies apply.

21

B.      The SAD does not allege against SMW an "accident" or an "occurrence" within the meaning of the Phoenix Policies.

C.      The SAD against SMW does not allege "property damage" caused by an "occurrence" within the meaning of the Phoenix Policies.

D.      The SAD against SMW seeks purely contractual, economic loss and not "property damage" within the meaning of the Phoenix Policies.

E.      There is no coverage for all or some of the damages claimed in the SAD against SMW due to SMW's knowledge of the property damage, if any, prior to all or some of the policy periods of the Phoenix Policies.

F.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Phoenix Policies by the "Expected or Intended" exclusion.

G.      Coverage for the SAD against SMW is precluded under the Phoenix Policies by the "Damage To Your Products or Completed Work", "Damage to Your Product" or "Damage to Your Work" exclusions.

H.      Coverage for the SAD against SMW is precluded under the Phoenix Policies by the "Impaired Property" exclusion.

I.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Phoenix Policies by the exclusion for contractual liability.

J.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Phoenix Policies by the Fungi or Bacteria exclusion.

K.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Phoenix Policies by the Construction Management Error and Omission exclusion.

L.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Phoenix Policies by the Professional Services exclusion.

M.      Coverage for the SAD against SMW is precluded under the Phoenix Policies because the alleged defects do not constitute "property damage" happening during the policy period of the Phoenix Policies, and, if otherwise, under the Phoenix Policies' language, all such damage is considered to happen during a single policy period.

N.      Coverage for the SAD against SMW is precluded under the Phoenix Policies due to lack of fortuity, as well as the known loss and/or loss in progress doctrines.

O.      Coverage for the SAD against SMW is precluded under the Phoenix Policies due to SMW's late notice of occurrence or suit.

P.      Should it be determined that TSA's damages are covered because of "property damage" caused by an "occurrence" and further it being a single occurrence, Phoenix's obligation, if any, is limited to paying just one limit regardless of the number of policies issued based on the non-cumulation clause.

Q.      The SAD may not be covered because the Phoenix Policies contain other terms, provisions, exclusions, limitations, conditions, and endorsements

which may preclude coverage for the SAD against SMW upon further investigation of these matters and Plaintiff Phoenix reserves its rights to amend its Complaint to allege additional defenses to coverage.

56.     By reason of the foregoing, there is an actual controversy between Plaintiff Phoenix and Defendant SMW, and this Court is empowered under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to render a declaratory judgment that there is no coverage for TSA's SAD under the primary policies issued by Plaintiff Phoenix to SMW.

<u>**COUNT II**</u>
**(No Duty– Travelers Excess Policies)**

57.     The Travelers Plaintiffs hereby incorporate by reference Paragraphs 1-56 of this Complaint as if each was fully set forth herein.

58.     There is no coverage for SMW under the Travelers Excess Policies on one or more of the following grounds:

A.     SMW's liability for the allegations in the SAD, if any, is not for damages "because of property damage" to which the Travelers Excess Policies apply.

B.     The SAD does not allege against SMW an "accident" or an "occurrence" within the meaning of the Travelers Excess Policies.

C.     The SAD against SMW does not allege "property damage" caused by an "occurrence" within the meaning of the Travelers Excess Policies.

D.     The SAD against SMW seeks purely contractual, economic loss and not "property damage" within the meaning of the Travelers Excess Policies.

E.      There is no coverage for all or some of the damages claimed in the SAD against SMW due to SMW's knowledge of the property damage, if any, prior to all or some of the Phoenix Policies' policy periods.

F.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Travelers Excess Policies by the "Expected or Intended" exclusion.

G.      Coverage for the SAD against SMW is precluded under the Travelers Excess Policies by the "Damage To Your Products or Completed Work", "Damage to Your Product" or "Damage to Your Work" exclusions.

H.      Coverage for the SAD against SMW is precluded under the Travelers Excess Policies by the "Impaired Property" exclusion.

I.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Travelers Excess Policies by the exclusion for contractual liability.

J.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Travelers Excess Policies by the Fungi or Bacteria exclusion.

K.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Travelers Excess Policies by the Construction Management Error and Omission exclusion.

L.      Coverage for some or all of the damages claimed in the SAD against SMW is precluded under the Travelers Excess Policies by the Professional

Services and Architectural, Engineering or Survey Professional Services exclusions.

M.     Coverage for the SAD against SMW is precluded under the Travelers Excess Policies because the alleged defects do not constitute "property damage" happening during the policy period of the Travelers Excess Policies, and, if otherwise, under the Travelers Excess Policies' language all such damage is considered to happen during a single policy period.

N.     Coverage for the SAD against SMW is precluded under the Travelers Excess Policies due to lack of fortuity, as well as the known loss and/or loss in progress doctrines.

O.     Coverage for the SAD against SMW is precluded under the Travelers Excess Policies due to SMW's late notice of occurrence or suit.

P.     Should it be determined that TSA's damages are covered because of property damage caused by an occurrence and further it being a single occurrence, Travelers' obligation, if any, is limited to paying just one limit regardless of the number of policies issued based on the non-cumulation clause.

Q.     The SAD may not be covered because the Travelers Excess Policies contain other terms, provisions, exclusions, limitations, conditions, and endorsements which may preclude coverage for the SAD against SMW upon Plaintiff's further investigation of these matters and the Travelers Plaintiffs reserve their rights to amend the Complaint to allege additional defenses to coverage.

59.     Alternatively, and to the extent that SMW is determined liable because of property damage caused by an occurrence, Travelers has no obligation to provide coverage to SMW under the Travelers Excess Policies until the applicable Retained Limits have been exhausted.

60.     Alternatively, Travelers has no obligation under the Travelers Excess Policies to SMW until its liability for covered damages in the SAD, if any, has been established either by final adjudication or actual trial, and with Travelers' written consent.

61.     By reason of the foregoing, there is an actual controversy between Plaintiffs and Defendant SMW, and this Court is empowered under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to render a declaratory judgment that there is no coverage for SMW under the excess liability insurance policies issued by Plaintiffs to SMW.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, The Phoenix Insurance Company ("Phoenix"), Travelers Indemnity Company ("Travelers Indemnity") and Travelers Property Casualty Company of America ("Travelers Property"), respectfully request this Court enter judgment declaring:

A.     Plaintiff Phoenix does not have a duty to defend S.M. Wilson & Co. under the Phoenix Policies against the Second Amended Demand ("SAD") or allegations arising out of its work at the Project;

B.     Plaintiff Phoenix may withdraw from the defense of the SAD;

C.     Plaintiff Phoenix does not have a duty to indemnify S.M. Wilson & Co. under the Phoenix Policies against the Second Amended Demand ("SAD") or allegations arising out of its work at the Project;

D.      Plaintiffs Travelers Indemnity and Travelers Property do not have any duty to indemnify (for defense or indemnity) S.M. Wilson & Co. for the SAD or allegations arising out of its work at the Project; and

E.      Plaintiffs are entitled to such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, The Phoenix Insurance Company, The Travelers Indemnity Company and Travelers Property Casualty Company of America, demands a trial by jury on all issues so triable.

Dated: March 6, 2020

Respectfully submitted,

THE PHOENIX INSURANCE COMPANY,
THE TRAVELERS INDEMNITY COMPANY
and TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

By:_____*/s/ Roderick T. Dunne*_____
            One of Their Attorneys

Roderick T. Dunne
Linda J. Carwile
**KARBAL, COHEN, ECONOMOU,
SILK & DUNNE, LLC**
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Tel:     (312) 431-3700
Fax:     (312) 431-3670
rdunne@karballaw.com
lcarwile@karballaw.com